RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0030p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

BRIAN GARRETT; NICHOLAS NUTTER, et al.,[*]

　　　　　　　　　　　　　　　　　　*Plaintiffs*,

EDWARD GONZALES, JOHN ANTOGNOLI, KENT KILGORE, ROGER BEEDON, ADAM PLOUSE, DANIEL RITCHIE, MICHAEL SCHYCK, DR. MARK CHRYSTAL, JOEL DAVIS, and JOHN DOES 1–2, 4–6, 8, 10–15, 17, 19, 21–25, 27, 29–33, 35–46, 48, 50–51, 53, 56–59, 61, 62, 64, 69, 75, 77, 85–86, and 88–92, individually and on behalf of all others similarly situated (21-3972); ROCKY RATLIFF (21-3974); ERIC SMITH, MARK COLEMAN, WILLIAM KNIGHT, JACK CAHILL, SCOTT OVERHOLT, ELMER LONG, RYAN HENRY, MICHAEL GLANE, CHRISTOPHER PERKINS, MICHAEL CALDWELL, THOMAS ROEHLIG, BRIAN ROSKOVICH, RICK MONGE, THOMAS LISY, ANASTACIO TITO VAZQUEZ, JR., JOHN MACDONALD, JR.; MAROON MONDALEK, LEO DISABATO, PETER NATHANSON, JEFFREY LADROW, ANTHONY SENTIERI, and JOHN DOES 1–15 and 17–19 (21-3982); MICHAEL ALF, GARY TILL, ALLEN NOVAKOWSKI; CHRIS ARMSTRONG, and JOHN DOES 93–97 and 99–101, individually and on behalf of all others similarly situated (21-4070); MICHAEL CANALES and JOHN DOE 20 (21-4128),

　　　　　　　　　　　　　　　　　　*Plaintiffs-Appellants*,

　*v.*

THE OHIO STATE UNIVERSITY,

　　　　　　　　　　　　　　　　　　*Defendant-Appellee*.

Nos. 21-3972 /3974
/3982 /4070 /4128

---

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
Nos. 18-cv-00692 (21-3972); 19-cv-04746 (21-3974); 19-cv-02462 (21-3982); 21-cv-02542 (21-4070); 21-cv-02562 (21-4128) —Michael H. Watson, District Judge.

Argued: October 25, 2022

Decided and Filed: February 15, 2023

Before: GUY, WHITE, and LARSEN, Circuit Judges.

---

[*]Brian Garrett was the lead plaintiff in 18-cv-00692, the underlying case to appeal 21-3972. Nicholas Nutter was the lead plaintiff in 19-cv-02462, the underlying case to appeal 21-3982. Neither Garrett nor Nutter is a party on appeal.

---

## COUNSEL

**ARGUED:** Larkin E. Walsh, SHARP LAW, LLP, Prairie Village, Kansas, for Appellants. Michael H. Carpenter, CARPENTER, LIPPS & LELAND LLP, Columbus, Ohio, for Appellee. **ON BRIEF:** Larkin E. Walsh, Rex A. Sharp, Sarah T. Bradshaw, SHARP LAW, LLP, Prairie Village, Kansas, for Appellants in 21-3972 and 21-4070. Michael H. Carpenter, Timothy R. Bricker, David J. Barthel, CARPENTER, LIPPS & LELAND LLP, Columbus, Ohio, for Appellee. J.C. Ratliff, RATLIFF LAW OFFICES, Marion, Ohio, for Appellants in 21-3982, 21-3974, and 21-4128. Konrad Kircher, RITTGERS & RITTGERS, Lebanon, Ohio, Adam Strychaluk, KAUFMAN LIEB LEBOWITZ & FRICK LLP, New York, New York, for Amici Curiae.

---

## OPINION

---

LARSEN, Circuit Judge. From the late 1970s to the late 1990s, Dr. Richard Strauss sexually abused hundreds of students at The Ohio State University. In 2018, former Ohio State student-athletes came forward alleging that Strauss had abused them and that Ohio State had covered it up. Hundreds of survivors sued Ohio State under Title IX, including the two groups of plaintiffs before us. The district court dismissed the claims as time-barred. Before we heard this appeal, another panel of this court reversed the district court's order as it pertained to two other groups of plaintiffs. *See Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686 (6th Cir. 2022). The holding in *Snyder-Hill* applies equally to these plaintiffs' claims, so we VACATE the district court's dismissal of plaintiffs' claims as untimely. Plaintiffs before us also bring two other claims: one group of plaintiffs appeals the dismissal of their Title IX retaliation claims, and all plaintiffs appeal the district court's denial of their motions for recusal. On those claims we AFFIRM. We REMAND to the district court for further proceedings consistent with this opinion.

Case: 21-3972     Document: 54-2     Filed: 02/15/2023     Page: 3

Nos. 21-3972 /3974 /3982 /4070 /4128          Garrett et al. v. Ohio State Univ.                    Page 3

I.

The disturbing facts of these cases began in 1978 when Ohio State hired Dr. Richard Strauss, M.D., as an assistant professor of medicine.[1] From 1978 to 1996, Strauss treated students and student-athletes in various capacities, including as the "official team doctor for as many as fourteen sports" and as an on-campus student health center physician. Strauss was also a tenured professor at Ohio State. When Strauss voluntarily and "quietly" retired in 1998, the university designated him as an Emeritus Professor even though he had been "quietly placed on administrative leave" in January 1996 following multiple reports of abuse. While Strauss was employed by Ohio State "[p]laintiffs, as well as hundreds of other former students, suffered unspeakable sexual abuse by Strauss."

In April 2018, former student-athletes publicly accused Ohio State of covering-up Strauss's abuse. On April 5, 2018, Ohio State hired the law firm Perkins Coie, LLP to investigate Strauss's conduct and the extent to which Ohio State knew about it. Ohio State released Perkins Coie's report in May 2019; the report concluded that Strauss had sexually abused at least 177 male student-patients, the majority of whom were student-athletes.[2] *See* Caryn Trombino & Markus Funk, Perkins Coie LLP, *Report of the Independent Investigation: Sexual Abuse Committed by Dr. Richard Strauss at The Ohio State University* (Perkins Coie Report) at 1, 43 (May 15, 2019).

Plaintiffs allege that, as documented in the Perkins Coie Report, Ohio State knew about Strauss's abuse and, at minimum, failed to meaningfully investigate it. Ohio State "legitimized Strauss's conduct as ordinary medical care," as various university officials ignored student complaints—including one as early Strauss's first year as team physician in 1979—and continued to employ and promote Strauss, failed to investigate numerous complaints about Strauss's sexual abuse, hid or failed to maintain records of abuse complaints and failed to inform students and some Ohio State staff of the abuse until 2018. Plaintiffs allege that Ohio State

---

[1]Because this case is at the motion to dismiss phase, we take the factual allegations in the plaintiffs' complaints as true. *See Doe v. Miami Univ.*, 882 F.3d 579, 588 (6th Cir. 2018).

[2]The report is dated May 15, 2019, but some plaintiffs allege that it was not publicly released by Ohio State until May 17, 2019.

played a "key and active role" in "normalizing and perpetuating" Strauss's abuse over the course of decades and that there was a "widespread and intentional culture of silence, cover-up, and deliberate indifference to sex crimes" within the university. Plaintiffs say that they now know that Strauss's harassment and abuse was reported to the head coaches of multiple sports, university administrators, university physicians and medical directors, and to the head of the Athletic Department—only for each of those officials to "turn[] a blind eye to the abuse." But some plaintiffs allege that they did not and could not have known about Ohio State's knowledge, and cover-up, of their abuse until the release of the Perkins Coie Report in 2019. Others allege that the earliest they could have known about Ohio State's role was in 2018, but that they did not know the full extent of the university's involvement until the release of the Perkins Coie Report in 2019.

In all, 532 plaintiffs brought 37 separate cases against Ohio State relating to Strauss's abuse and the university's response. This appeal concerns five of those suits, consolidated into two appeals that we hear together. On July 16, 2018, a group of plaintiffs led by Brian Garrett filed a class action complaint against Ohio State related to Strauss's abuse, *Garrett, et al. v. The Ohio State University*, No. 21-3972. On May 14, 2021, the *Garrett* class members filed a "copy-cat class action," *Alf, et al. v. The Ohio State University*, No. 21-4070. The *Garrett* and *Alf* cases were consolidated on appeal. The *Garrett* and *Alf* plaintiffs are former Ohio State students or student-athletes who allege they were abused by Strauss between 1978 and 1998. Rocky Ratliff, the plaintiff in *Ratliff*, serves as counsel in his own case, *Ratliff v. The Ohio State University*, No. 21-3974, and in two others: *Nutter, et al. v. The Ohio State University*, No. 21-3982, and *Canales, et al. v. The Ohio State University*, No. 21-4128. Those cases were filed on October 25, 2019, June 12, 2019, and May 17, 2021, respectively. All the *Ratliff*, *Nutter*, and *Canales* plaintiffs are former Ohio State student-athletes.

Judge Michael Watson handled all cases relating to Strauss in the Southern District of Ohio. Judge Watson told the parties at a status conference in January 2019 that he was teaching a class at The Ohio State University Moritz College of Law, and he thought "every member of this bench probably, have at one time or another served as an adjunct professor of Ohio State." At the same status conference, Judge Watson also told the parties, "I say that only because if you

want to take shots, you can take shots. I'm thinking that my intention is to stay on the case and, nonetheless, I'm letting you know in case you want to raise something." At the same hearing, Judge Watson told the parties that he knew the chairman of the Ohio State Board of Trustees and that the president was "a man of his word." No party brought a recusal motion at that time.

On September 9, 2021, Judge Watson called an emergency status conference after a reporter contacted the court's public information specialist, inquiring about a business relationship between Ohio State and a store Judge Watson's wife owns. Judge Watson explained that "ethical considerations are the utmost importance to me personally, to the parties and to the public, as well as the federal judiciary as a whole." He explained that his wife owns a store that sells and manufactures flags, including Ohio State flags; the business has a licensing agreement with Ohio State; and the business pays a 12% royalty to Ohio State for every Ohio State trademarked product the business sells. Judge Watson told the parties that he had not disclosed the licensing agreement previously—and he still did not believe disclosure was required—but that neither he nor his wife had a financial interest in Ohio State as defined by the Code of Conduct for judges or relevant advisory ethics opinions. Nonetheless, because "a member of the public" had inquired about the store, he "believe[d] that Canon 3 of the Code of Ethics, the appearance of impropriety may be implicated" so he wanted to formally disclose the fact on the record and give parties a chance to move for recusal.

All plaintiffs before us filed motions for recusal and to transfer venue based on the above and Judge Watson's other connections to Ohio State (namely, his participation in the "annual Buckeye Cruise for Cancer"). The district court denied the motions in a detailed opinion. *See Garrett v. Ohio State Univ.*, No. 2:18-CV-692, 2021 WL 7186381 (S.D. Ohio Sept. 22, 2021).

Ohio State filed motions to dismiss in each case. The district court granted the motions, concluding that all plaintiffs' Title IX claims were time-barred by Ohio's two-year statute of limitations, whether measured by a discovery rule or an occurrence rule.

The *Ratliff*, *Nutter*, and *Canales* plaintiffs also brought a Title IX retaliation claim against Ohio State. They asserted that reporting Strauss's sexual abuse and Ohio State's cover-up was protected activity. And they alleged that current and former Ohio State employees and others

connected to Ohio State made public comments on the radio and private statements via phone, email or text, in a retaliatory attempt to "silence" plaintiffs. The district court dismissed the retaliation claims for a failure to state a claim.

All plaintiffs now appeal.

II.

A.  Claim Accrual

We review de novo the grant of a motion to dismiss on statute of limitations grounds. *Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 839 F.3d 458, 461 (6th Cir. 2016). Ohio law supplies the statute of limitations,[3] but federal law governs when the claims accrue, that is, "when the statute begins to run." *Snyder-Hill*, 48 F.4th at 698 (quoting *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003)).

The accrual question was the centerpiece of these appeals. But before we heard this appeal, another panel of this court heard the appeal of a different group of Ohio State plaintiffs, whose cases had been consolidated with these cases in the district court and whose cases were dismissed by the same order from which the current plaintiffs appeal. *See Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686 (6th Cir. 2022). That panel held that the discovery rule applies to Title IX claims, meaning that a plaintiff's claim accrues when he "knows or has reason to know" not only that he was injured but also that "the defendant caused" his injury. *Id.* at 704. For a Title IX case like this one, a plaintiff's claim does not accrue until he "knows or has reason to know that the defendant institution," here Ohio State, injured him. *Id.* (emphasis omitted). So "the clock starts only once the plaintiff knows or should have known that Ohio State administrators

---

[3]The *Garrett* and *Alf* plaintiffs argue that Ohio's two-year statute of limitations should not govern their Title IX claims. They urge that any limitations period must be set by federal law, and that because Title IX does not contain an express limitations period, it has "no limitations, except the common law laches doctrine." It is, of course, not surprising that Title IX contains no express limitations period, as it also contains no "express cause of action that allows students to sue." *Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1013 (6th Cir. 2022). Instead, "the Supreme Court created an implied right of action that permits students to seek damages." *Id.* And we, like our sister circuits, have held "that Title IX (like § 1983) adopts the forum state's statute of limitations for personal-injury actions." *Id.* (citing decisions from the Second, Fifth, and Ninth Circuits). So Ohio's two-year statute of limitations for personal injury claims applies. *Snyder-Hill*, 48 F.4th at 698.

Nos. 21-3972 /3974 /3982     *Garrett et al. v. Ohio State Univ.*     Page 7
/4070 /4128

'with authority to take corrective action' knew of Strauss's conduct and failed to respond appropriately." *Id.* at 705 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). In addressing claims substantially similar to those presented here, *Snyder-Hill* held that "the plaintiffs' claims survive Ohio State's motion to dismiss for three independent" reasons: until 2018, when the allegations of abuse became public, (1) "plaintiffs plausibly allege that they did not know and lacked reason to know that Ohio State caused their injury," (2) "they plausibly allege that even if they had investigated further, they could not have learned of Ohio State's conduct," and (3) some "plaintiffs plausibly allege that they did not know that they were abused." *Id.* at 706–07.

When this case was briefed, the parties did not have the benefit of the *Snyder-Hill* opinion; but once that opinion was released, the parties submitted some supplemental briefing on the effect of *Snyder-Hill* in connection with the plaintiffs' motion to cancel oral argument. We denied that motion. At oral argument, we invited the parties to explain any ways in which they thought *Snyder-Hill* did not govern the accrual question.

Ohio State argued that the *Garrett* and *Alf* plaintiffs' cases could be distinguished from *Snyder-Hill* because the *Garrett* and *Alf* plaintiffs conceded in their reply brief that they knew of their abuse when it occurred. But this concession does not distinguish the *Garrett* and *Alf* plaintiffs from all of the *Snyder-Hill* plaintiffs. The *Snyder-Hill* opinion noted that nine plaintiffs in that case likewise knew they were being abused at the time. *See id.* at 694, 706. *Snyder-Hill* still found those claims timely because the plaintiffs had plausibly alleged that they did not know or have reason to know, until 2018, about *Ohio State's* conduct. *Id.* at 704–05.

A few facts do distinguish the complaints in the present cases from *Snyder-Hill*, however. According to *Snyder-Hill*, the plaintiffs in those cases alleged that they could not have known that Ohio State injured them until 2018, when the allegations of abuse became public. *Id.* at 689–90, 695. In the present cases, the *Garrett* and *Alf* plaintiffs assert that the spring of 2018 was the *earliest* they could have known about Ohio State's role in causing their injury; but they contend that they did not and could not have known of Ohio State's full involvement until the Perkins Coie Report was released in 2019. For the *Alf* plaintiffs, the 2019 date may be critical,

absent tolling.**⁴** They have conceded that they knew Strauss's actions constituted abuse at the time they occurred, and their suit was not filed until May 14, 2021 (less than two years from the Perkins Coie Report's release, but more than two years from Ohio State's investigation announcement). The 2019 date, and indeed the particular day in May, might also matter to the *Canales* plaintiffs, who filed suit on May 17, 2021. They allege that the Perkins Coie Report was "issued" or "released" on May 15, 2019, but that they did not know either of their abuse or Ohio State's role in it until May 17, 2019, when the university's President and Chair of the Board of Trustees issued a public letter, "which resulted in extensive nationwide media coverage."

Just when the plaintiffs knew or should have known that Strauss's conduct was abuse, and when they knew or should have known about Ohio State's role in causing their injuries are questions of fact that we cannot resolve on a motion to dismiss. *See Am. Premier Underwriters*, 839 F.3d at 464 (cautioning that "courts should not dismiss complaints on statute-of-limitations grounds when there are disputed factual questions relating to the accrual date"); *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 476 (6th Cir. 2013) (in the tolling context, stating that questions about a plaintiff's duty to investigate "are questions for summary judgment or for trial, and they should not be resolved on a motion to dismiss"). For now, we conclude that the *Ratliff*, *Nutter*, and *Canales* plaintiffs have plausibly alleged all three independent reasons supporting *Snyder-Hill*'s holding, and the *Garrett* and *Alf* plaintiffs have plausibly alleged the first two. That is enough for their claims to survive Ohio State's motion to dismiss.

---

**⁴**The plaintiffs argued below that the *Garrett* class filing on July 16, 2018, tolled their statute of limitations. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 551, 553 (1974); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353–54 (1983).

Nos. 21-3972 /3974 /3982 /4070 /4128   *Garrett et al. v. Ohio State Univ.*   Page 9

### B.  The *Ratliff*, *Nutter*, and *Canales* Plaintiffs' Retaliation Claim

The district court found that the *Ratliff*, *Nutter*, and *Canales* plaintiffs had failed to state a Title IX retaliation claim. Reviewing that decision de novo, *see Doe v. Miami Univ.*, 882 F.3d 579, 588 (6th Cir. 2018), we agree. The Supreme Court has held that a "funding recipient" may be liable for retaliating "against a person because he complains of sex discrimination." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005) (emphasis omitted). But plaintiffs have failed to plead a retaliation claim. At a minimum, they have failed to allege that the funding recipient, Ohio State, retaliated against them. They broadly claim retaliation by "OSU employees, faculty, staff, former employees of OSU, friends and/or benefactors of OSU" in the form of public interviews, emails, texts and calls to some plaintiffs. But there is neither individual liability nor respondeat superior liability under Title IX; instead "an educational institution is responsible under Title IX only for its 'own official decision[s].'" *Bose v. Bea*, 947 F.3d 983, 991 (6th Cir. 2020) (quoting *Gebser*, 524 U.S. at 290–91). So the *Ratliff*, *Nutter*, and *Canales* plaintiffs must adequately allege a claim against Ohio State as an institution. They have not done so.

The plaintiffs attempt to avoid this conclusion by stating that Ohio State has not taken any action against the Ohio State-affiliated individuals, so Ohio State has ratified their actions. But we have not recognized a claim for deliberate indifference to retaliation, *see Bose*, 947 F.3d at 993; and, even if we were to do so, plaintiffs have not adequately pleaded that anyone within Ohio State, with power to stop the alleged retaliatory actions, had any knowledge of them, *see id.* at 989–90 (citing *Gebser*, 524 U.S. at 290). And, for Ratliff himself, we also do not know what, if any, harm resulted. *Cf. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) (Title VII case) ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."). The *Ratliff*, *Nutter*, and *Canales* plaintiffs' vague allegations are insufficient to state a claim for Title IX retaliation.

### C.  Recusal

Finally, all plaintiffs before us appeal the district court's denial of their motions to recuse the district judge and to transfer the case to a judge in a different division of the Southern District

of Ohio. We review both motions for an abuse of discretion. *Alemarah v. Gen. Motors, LLC*, 980 F.3d 1083, 1086 (6th Cir. 2020) (per curiam); *Stanifer v. Brannan*, 564 F.3d 455, 456 (6th Cir. 2009). "An abuse of discretion occurs when a district court commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *King v. Harwood*, 852 F.3d 568, 579 (6th Cir. 2017) (internal quotation marks omitted) (quoting *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008)).

*Recusal Standard.* Federal judges are bound by the recusal standard in 28 U.S.C. § 455(a): "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." And a judge "shall also disqualify himself" when "[h]e knows that he . . . or his spouse . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." *Id.* § 455(b)(4). We cannot say that Judge Watson abused his discretion in determining that § 455 did not require his recusal.

*Section 455(b)—Financial Interest.* Both sets of plaintiffs argue that Judge Watson was subject to automatic recusal because he and/or his wife has a financial interest in Ohio State. A "financial interest" is "ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party." *Id.* § 455(d)(4). Plaintiffs argue that Judge Watson's wife's store, which sells flags to and has licensing agreements with many entities, including Ohio State, gives the judge or his wife a financial interest in Ohio State. They also suggest that Judge Watson's salary as an adjunct professor at Ohio State's law school gives him a financial interest in the university. Neither claim is correct. Neither Mrs. Watson's ownership of the store nor Judge Watson's adjunct professorship gave Judge Watson or his wife "ownership of a legal or equitable interest" in Ohio State; nor did they establish either of them as a "director, adviser, or other active participant in the affairs of" the university. *Id.* And neither position entailed an "interest that could be substantially affected by the outcome of the proceeding." *Id.* § 455(b)(4).

Section 455 "does not require the judge to 'accept as true the allegations made by the party seeking recusal.'" *Scott v. Metro. Health Corp.*, 234 F. App'x 341, 353 (6th Cir. 2007) (quoting *In re Martinez-Catala*, 129 F.3d 213, 220 (1st Cir. 1997)). The parties do not challenge Judge Watson's factfinding, so we proceed on the facts as found below. *See In re Martinez-Catala*, 129 F.3d at 220 ("It might seem odd that recusal issues should be decided by the very judge whose recusal is in question. But there are other considerations at work, including a desire for expedition and a concern to discourage judge shopping.").

The district court found that "[n]either the [s]tore, Defendant's licensing agreements, nor Defendant's vendor relationships are at issue in the underlying lawsuits or implicated in Plaintiffs' allegations of wrongdoing." *Garrett*, 2021 WL 7186381, at *2. It also found that in the time the cases had been pending before the court, the store's sales to Ohio State made up at most 0.89% of its total sales in a given year, and that the combination of these direct sales and sales of Ohio State "licensed products to the public . . . never exceeded 2.4% of the [s]tore's total sales." *Id.* at *6. And the court concluded that the store will not be "affected by the outcome of these proceedings." *Id.* at *2; 28 U.S.C. § 455(b)(4). Based on these findings, the district judge did not abuse his discretion in declining to recuse. *See Scott*, 234 F. App'x at 357 ("[D]isqualification is not required on the basis of . . . remote, contingent, indirect or speculative [financial] interests." (quoting *United States v. Bayless*, 201 F.3d 116, 127 (2d Cir. 2000))).

*Section 455(a)—Reasonable Grounds to Question Impartiality.* The *Ratliff*, *Nutter*, and *Canales* plaintiffs also argue that the district court erred in denying their motions for recusal based on § 455(a). Under that section, a judge must recuse "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). As these plaintiffs point out, the question is whether, given the facts, an objective "reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits." Ratliff Br. at 22 (quoting *Hook* v. *McDade*, 89 F.3d 350, 354 (7th Cir. 1996)); *see also Ragozzine v. Youngstown State Univ.*, 783 F.3d 1077, 1079 (6th Cir. 2015) ("[A] judge [must] recuse 'if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality.'" (quoting *Hughes v. United States*, 899 F.2d 1495, 1501 (6th Cir. 1990))). "The standard is an objective one; hence, the judge need not recuse himself based on the 'subjective

view of a party' no matter how strongly that view is held." *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990) (citation omitted).

First, the plaintiffs argue that Judge Watson's role as an adjunct professor leads to reasonable questions about his impartiality. In his detailed opinion denying the recusal motions, Judge Watson relied on the Guide to Judiciary Policy, Vol. 2, Ch. 3, Compendium of Selected Opinions, § 3.4-3(a), which provides guidance to judges on recusal matters. That guidance says that a judge who teaches at a law school need not recuse from every case involving the university as a whole. Instead, a judge should consider "the size and cohesiveness of the university, the degree of independence of the law school, the nature of the case, and related factors." *Id.* This kind of "opinion" is not binding, but here we think the factors it directs judges to consider are sound. In line with that guidance, Judge Watson determined that his adjunct professorship at Moritz College of Law did not require his recusal from these cases involving the university. He reasonably explained that Ohio State "is one of the largest universities in the country, and Moritz is 'one small and virtually autonomous part.'" *Garrett*, 2021 WL 7186381, at *5 (quoting *Meng Huang v. Ohio State Univ.*, No. 2:19-CV-1976, 2020 WL 8461547, at *2 (S.D. Ohio Oct. 26, 2020), *aff'd*, 2020 WL 8461560 (S.D. Ohio Nov. 4, 2020)). And Moritz "is not involved in any of the allegations at issue in these cases." *Id.* We join our sister circuits in concluding that recusal is not required just because a judge serves as an adjunct professor at the law school of a party-university. *See, e.g.*, *Sessoms v. Trs. of Univ. of Penn.*, 739 F. App'x 84, 90 (3d Cir. 2018) (concluding that the district court judge who served as an adjunct professor at the defendant university's law school did not abuse its discretion in declining to recuse in a case against the university); *Roe v. St. Louis Univ.*, 746 F.3d 874, 887 (8th Cir. 2014) (affirming decision not to recuse in a case against the university where district judge was an alumnus of the undergraduate school and law school, taught at the law school, and made "positive comments about the school"); *Wu v. Thomas*, 996 F.2d 271, 275 (11th Cir. 1993) (holding that district judge's "status as an adjunct professor [at law school] and his past contributions to the [u]niversity" did not require recusal in a case against the university). The district court did not abuse its discretion by denying the motions for recusal on this basis.

The *Ratliff*, *Nutter*, and *Canales* plaintiffs also suggest that Mrs. Watson's ownership of the flag store creates a reasonable ground to question the judge's impartiality. It is true that the flag store has a licensing agreement to sell Ohio State-branded merchandise; that it prominently advertises that merchandise; and that it even sells some of that merchandise to Ohio State. *See Garrett*, 2021 WL 7186381, at *2. But, as noted above, the flag store does not create a financial interest either in the university or in the outcome of this lawsuit, that would require Judge Watson's recusal under § 455(b). And the store's financial relationships with Ohio State are too de minimis to raise reasonable questions concerning impartiality under § 455(a). The *Ratliff*, *Nutter*, and *Canales* plaintiffs' only other argument—that the store advertises its long history of supplying flags to the Ohio State football cheerleaders—is insufficient. The store's advertising would not cause a reasonable, informed observer to believe that Judge Watson would resolve this case on a basis other than the merits. *See Hook*, 89 F.3d at 354 (citing *In re Mason*, 916 F.2d 384, 385–86 (7th Cir. 1990)).

The *Ratliff*, *Nutter*, and *Canales* plaintiffs also point to Judge Watson's and his wife's involvement with the "Buckeye Cruise for Cancer," a fundraising event for the Ohio State University Comprehensive Cancer Center. *Garrett*, 2021 WL 7186381, at *2. The district court found that the cruise raises money to support the Cancer Center, which is an "independent entity;" and that the event is not organized by the university and raises no funds for the university itself. *Id.* at *2, *7. Plaintiffs do not challenge these findings on appeal. And, as Judge Watson pointed out, *id.* at *7, Canon 4 of the Code of Conduct for United States Judges, which provides guidance on "extrajudicial activities," expressly permits judges to "participate in . . . [a] charitable . . . organization." *Available at* https://www.uscourts.gov/judges-judgeships/code-conduct-united-states-judges#e. Plaintiffs seem to concede this point, repeatedly calling the couple's fundraising efforts "noble."

Plaintiffs nonetheless argue that the cruise created a reasonable basis for questioning the judge's impartiality because the cruise was filled with Ohio State "notables," and because Judge Watson and his wife were recognized both onboard and on social media for their fundraising efforts. But plaintiffs do not contend that Judge Watson discussed these lawsuits with anyone on the cruise; and plaintiffs' own exhibits show that the recognition came from the Cancer Center,

not from Ohio State. The district court did not abuse its discretion in denying the motion for recusal on this basis.

Lastly, the *Ratliff*, *Nutter*, and *Canales* plaintiffs suggest either that Judge Watson's "full involvement" with Ohio State, or his failure to timely disclose it, creates an objective basis to question the judge's impartiality. We don't doubt that "the whole is sometimes greater than the sum of [its] parts." *In re Martinez-Catala*, 129 F.3d at 221. "The cumulative effect of a judge's individual actions, comments and past associations could raise some question about impartiality, even though none (taken alone) would require recusal." *Id.* But considered against the backdrop of this court's caselaw, we cannot say that such is the case here. *See Easley v. Univ. of Mich. Bd. of Regents*, 906 F.2d 1143, 1145–46 (6th Cir. 1990) (concluding that the judge, presiding over a case involving the law school, was not required to recuse where he was "an alumnus of the Law School," a past "volunteer fundraiser for the Law School Fund," a "member of the [Law School's] Committee of Visitors . . . the purposes of which are essentially social and informational," and a "member of The University of Michigan Club of Detroit through which he participates in athletics-related social events"). Just as we determined that it was not abuse of discretion for Judge Watson to deny plaintiffs' motions for recusal on any of the above grounds, we also conclude that he did not abuse his discretion when considering these factors in combination.

Nor is Judge Watson's failure to timely disclose these purported conflicts indicative of partiality. First, as plaintiffs acknowledge, Judge Watson did disclose his adjunct professorship, and his acquaintance with the chairman of the Board of Trustees, more than two years before plaintiffs filed their recusal motions, and he specifically invited any recusal motions at that time. Next, given the unchallenged factual findings below, we cannot say that Judge Watson was under any obligation to disclose his charitable, and already public, efforts on behalf of the Cancer Center. That leaves the matter of the flag store. While the flag store creates no "financial interest" requiring recusal under § 455(b)(4), and plaintiffs have established no reasonable basis to question Judge Watson's impartiality on this ground, the better course would have been to disclose the store's licensing agreement and direct sales at the outset of the litigation. As Judge Watson himself acknowledged, the fact that a judge's "spouse or the

spouse's business has a business relationship with an entity that appears in an unrelated proceeding before the judge usually does not require the judge's recusal"—but sometimes it may. *Garrett*, 2021 WL 7186381, at *5 (citing Guide to Judiciary Policy, Vol. 2, Ch. 2, Advisory Opinion No. 107). Nevertheless, in light of the circumstances—including Judge Watson's emergency status conference concerning the issue and his renewed receptiveness to recusal motions thereafter—we cannot say that the timing of Judge Watson's disclosure raises objective impartiality concerns.

Judge Watson, who sits in Columbus, Ohio, undoubtedly had a number of points of contact with Ohio State, its affiliates, and hangers-on. That is neither surprising, nor necessarily undesirable. The Judicial Code of Conduct counsels that the "complete separation of a judge from extrajudicial activities is neither possible nor wise; a judge should not become isolated from the society in which the judge lives." Code of Conduct for United States Judges, Commentary, Canon 4. The question under § 455(a) is whether the judge's personal or community associations are of such a character that they would cause an informed, reasonable observer to believe that the judge "could not set [them] aside when judging the dispute." *Liteky v. United States*, 510 U.S. 540, 557–58 (1994) (Kennedy, J., concurring). An impartial judiciary—and the appearance of an impartial judiciary—is of the utmost importance. At the same time, "needless recusals exact a significant toll"; "a change of umpire mid-contest may require a great deal of work to be redone . . . and facilitate judge-shopping." *In re U.S.*, 572 F.3d 301, 308 (7th Cir. 2009) (quoting *Matter of Nat'l Union Fire Ins. Co. of Pitt.*, 839 F.2d 1226, 1229 (7th Cir. 1988)). So, "[t]here is as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is." *Easley v. Univ. of Mich. Bd. of Regents*, 853 F.2d 1351, 1356 (6th Cir. 1988) (quoting *In re Union Leader Corp.*, 292 F.2d 381, 391 (1st Cir. 1961)).

We may reverse the denial of a recusal motion "only where [we are] left with a 'definite and firm conviction that the trial court committed a clear error of judgment.'" *United States v. Angelus*, 258 F. App'x 840, 842 (6th Cir. 2007) (quoting *In re Triple S Rests., Inc.*, 422 F.3d 405, 418 (6th Cir. 2005)). We have no such conviction here. And because we conclude that Judge Watson did not abuse his discretion in denying the motion for recusal, we also conclude that he

did not abuse his discretion in denying the motions for transfer. *See Liteky*, 510 U.S. at 551 ("It has long been regarded as normal and proper for a judge to sit in the same case upon its remand . . . .").

* * *

We VACATE the district court's dismissal of all plaintiffs' Title IX claims and REMAND to the district court for further proceedings consistent with this opinion. We AFFIRM the district court's dismissal of the *Ratliff*, *Nutter*, and *Canales* plaintiffs' retaliation claims and the denial of all plaintiffs' motions for recusal and to transfer venue.